# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ACCO BRANDS USA LLC *f/k/a* ACCO
BRANDS, INC.,

      Plaintiff,

      v.

SECUCOMPUTER, INC., NOBLE
SECURITY SYSTEMS, INC., OFFICE
SECURITY SOLUTIONS, INC.,
INOVETIVE LOCKS, LTD. d/b/a
INNOVATIVE LOCKS LTD.,
PEMANDROS TRADING, LTD., and
OFFICE SECURITY, INC.,

      Defendants,

      *-and-*

ACCO BRANDS USA LLC,

      Plaintiff,

      v.

PC GUARDIAN ANTI-THEFT
PRODUCTS, INC., NOBLE LOCKS
ENTERPRISES, INC., WAREHOUSE
ETC., INC., JR SALES/MARKETING,
LLC *d/b/a* ROYAL LOCKS, MIZ
ENGINEERING, LTD., TECH FOR LESS,
INC., PHILADELPHIA SECURITY
PRODUCTS, INC., DATAMATION
SYSTEMS, INC., CYBERGUYS, INC.,
XTATIX LLC, INOVETIVE LOCKS LTD.
*d/b/a* INNOVATIVE LOCKS LTD.,
PEMANDROS TRADING LTD., and
OFFICE SECURITY, INC.,

      Defendants,

No. 03 C 1820, 06 C 7102, 07 C 0591
Judge James B. Zagel

-and-

GUAN GAO COMPANY LTD., *d/b/a*
POLOX COMPANY LTD., and NOBLE
SECURITY, INC.,

       Plaintiffs/Counterclaim Defendants,

       v.

ACCO BRANDS USA LLC,

       Defendant/Counterclaim Plaintiff,

       v.

INOVETIVE LOCKS LTD. *d/b/a*
INNOVATIVE LOCKS LTD.,
PEMANDROS TRADING LTD., OFFICE
SECURITY, INC., and MEIR AVGANIM,

       Counterclaim Defendants.

## MEMORANDUM OPINION AND ORDER

On April 10, 2008, the Court held a claim construction hearing in this case to determine the appropriate meanings of the relevant key words used in the claims of the patents at issue, the infringement of which is alleged by Plaintiff. After consideration of the parties' papers and presentations, I construe the claims at issue as follows.

## I. Background

This is a patent infringement case that stems out of Plaintiff ACCO Brands' patents directed at security locks for portable electronics, including, but not limited to, laptop computers. This case involves four of ACCO's patents relating to such locking devices, and, with regard to claim construction, ACCO contends that only the '403 patent contains claim terms requiring this

Court's clarification. Each of the Defendants is involved in the manufacturing and/or marketing of the security locks of one or more of the patents at issue in this suit. Defendant PC Guardian Anti-Theft Products, Inc. ("PC Guardian") is the maker of the Notebook Guardian line of locks for laptop computers. Defendants Noble Security, Inc. ("NSI") and Guan Gao Co., d/b/a Polox Co., Ltd. ("Polox") (collectively "Noble") and PC Guardian were the only Defendants to appear at the *Markman* hearing and to submit proposed claim constructions for the patents-in-issue.

On September 14, 2007, I approved the parties' proposed claim construction schedule. ACCO timely produced a list of claim terms it believes require construction, with proposed definitions on December 14, 2007. Defendants were required to produce their lists of claim terms by December 21, 2007. PC Guardian filed its initial list of claim terms and definitions on December 21, 2007 and then revised its positions on January 17, January 23, and January 24. Noble produced a revised construction of terms on February 1, 2008, the day the Joint Statement was due. ACCO argues that Defendants' untimely revisions should be stricken. I denied that motion to strike in open court on April 10, 2008.

## II. The Standard Principles of Claim Construction

Claim construction is a matter of law for the court to decide. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996). In order "[t]o ascertain the meaning of claims, [the court] consider[s] three sources: The claims, the specification, and the prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F3d 967, 979 (Fed. Cir. 1995) (citations omitted). These three sources are the intrinsic evidence, public records available for all to consult and rely upon when determining the meaning and scope of a patent claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). When the intrinsic evidence

unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, such as expert testimony and treatises, is inappropriate. *Id.*

Claim interpretation begins with the actual language of the claims. *Bell Commc'ns Research, Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995). Generally, the words, phrases and terms in patent claims should receive their ordinary and accustomed meaning. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) (noting a "heavy presumption in favor of the ordinary meaning of claim language."). The strong presumption in favor of the ordinary meaning may be overcome only when the patentee "clearly set[s] forth a definition for a claim term in the specification." *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1306 (Fed. Cir. 2003) (*citing Johnson Worldwide Assoc.*, 175 F.3d at 989-90). "[A] technical term used in a patent claim is interpreted as having the meaning a person of ordinary skill in the field of the invention would understand it to mean." *Dow Chem. Co. v. Sumitomo Chem. Co.*, 257 F.3d 1364, 1372 (Fed. Cir. 2001) (citation omitted).

"Claims must be read in view of the specification, of which they are a part." *Markman*, 52 F.3d at 979 (citations omitted). The specification may reveal "whether the inventor has used any terms in a manner inconsistent with their ordinary meaning." *Vitronics Corp.*, 90 F.3d at 1582 (also noting that "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term"). The specification also serves as an aid in determining "the meaning of the claim term as it is used . . . in the context of the entirety of [the] invention." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F.3d 859, 866 (Fed. Cir. 2000) (*quoting Comark Communs., Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998)).

The claims, however, are not limited to the embodiment shown in the specifications. *Anchor Wall*, 340 F.3d at 1306-07; *Transmatic, Inc. v. Gulton Indus.*, 53 F.3d 1270, 1277 (Fed. Cir. 1995). Limitations appearing only in the specifications cannot be read into a claim because "the claim, not the specification, measures the invention." *Howes v. Zircon Corp.*, 992 F. Supp. 957, 961 (N.D. Ill. 1998) (*citing SRI Int'l v. Matsushita Elec. Corp. Of Am.*, 775 F.2d 1107 (Fed. Cir. 1985)). However, when the specification "makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed Cir. 2001).

The publicly available prosecution history, which details the proceedings before the Patent and Trademark Office ("PTO"), may limit the interpretation of claim terms by revealing express representations made by the applicant regarding the scope of the claims or by excluding interpretations that were disclaimed during prosecution. *Vitronics*, 90 F.3d at 1582-83. However, "unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage." *Kopykake Enters. v. Lucks Co.*, 264 F.3d 1377, 1382 (Fed. Cir. 2001) (internal quotation and citation omitted). Any such disavowal "must be clear and unmistakable." *Anchor Wall*, 340 F.3d at 1307. Finally, extrinsic evidence such as expert testimony may be considered only where the language of the claims remains ambiguous after consideration of the claim language, specification and file history. *Key Pharms. v. Hercon Lab. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998). "[E]xtrinsic evidence in general, and expert testimony in particular, may be used only to help the court come

5

to the proper understanding of the claims; it may not be used to vary or contradict the claim language." *Vitronics*, 90 F.3d at 1584.

## III. Claim Construction Relating to All Patents

Defendant Noble proposes constructions for four terms used variously by the four patents-in-suit. I will address two of these proposed constructions at the outset, and the other two in turn with the proposed claims of Defendant PC Guardian.

### A. "About"

Noble proposes that the term "about" as used variously in the '403, '125, '989, and '479 patents as a prefix for the slot measurement (for example, "about 3mm x 7mm") should mean "a slot which has a 'design' dimension of 3mm x 7mm, and which is manufactured to that design dimension within manufacturing tolerances." Both ACCO and PC Guardian submit that no construction is required for the term "about."

As used in patent language, the term "about" has an ordinary meaning of "approximately." *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1371 (Fed. Cir. 2005) (reversing the district court's construction of "about" and ascribing to the term its "ordinary meaning" of "approximately"); *see also Abbott Labs. v. Alra Labs., Inc.*, No. 92-5806, 1997 WL 667796, at *7 (N.D. Ill. Oct. 24, 1997) (finding 7 units is "about" 6 or "about" 4 to 6 units and implicitly adopting "approximately" as the ordinary meaning of "about"). Clearly the term "about 3mm x 7mm" could include security slots which are larger or smaller in width or length than exactly the 3mm x 7mm dimensions, so long as the slots were approximately 3mm x 7mm, within the context of this case. *See Ortho-McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, (Fed. Cir. 2007) ("the numerical limits" of the term "about . . . depends

upon the technological facts of a particular case.").  Noble argues that the ordinary definition of

"about" is overcome because the specification of the '989 patent includes a description of a

preferred embodiment with a slot having a long dimension of "seven millimeters, and a short

dimension of three millimeters," without including the word "about."  However, references in a

specification to a preferred embodiment "do not evince a clear intent by the patentee to limit the

article" to the exact words used.  *Free Motion Fitness, Inc. v. Cybex Int'l Inc.*, 423 F.3d 1343,

1350 (Fed. Cir. 2005).  Also, nothing in the prosecution history limits the meaning of "about"

beyond its ordinary definition.  For these reasons, I decline to construe the term "about" beyond

its ordinary meaning.

     *B.  "Portable"*

     Next, Noble proposes a construction for the term "portable" as used in conjunction with

either "electronic device" or "computer" in each of the patents-in-issue.  According to Noble, the

term "portable" should be construed as meaning "luggable equipment that can be carried in one

hand such as notebooks, subnotebooks, and handheld computers, as well as palmtops and

personal digital assistants."  ACCO argues that because the term is clear on its face, and its

ordinary meaning has not been disavowed in the specification or prosecution history, no

construction is required.  PC Guardian likewise proposes that no additional construction is

required.

     Noble does not cite any part of the specification in support of its effort to limit the term

"portable" to include only certain types of electronic devices and computers.  Also, Noble's

proposal would create ambiguity as to what any one person may be able to carry in one hand.  I

find that the term "portable" has an understood ordinary meaning, which has not been restricted in the specification of the patents. I decline to construe the term any further.

## IV. Claim Construction for U.S. Patent No. 7,100,403

The '403 patent, entitled "Computer Physical Security Device," discloses an apparatus and locking method for portable electronic devices. The additional claims in the '403 Patent which require construction are stated below, with the disputed terms emphasized.

> 3. The locking method of claim 1, **wherein the locked configuration is maintained by use of a pin proximate said locking member**, and **wherein said pin extends into said security slot after said locking member has moved to a locked position**.
> . . .
> 5. The locking method of claim 1 further comprising inserting **a pin** into said security slot before said locking member moves to a locked position.
> . . .
> 11. The locking method of claim 1 wherein the attachment mechanism includes a **pin**.
> . . .
> 16. The locking method of claim 1 wherein at least part of the locking member is disposed between a **pair of pins in the attachment mechanism**.

ACCO proposes that only one phrase in the '403 patent requires construction: "wherein the locked configuration is maintained by use of a pin." ACCO submits that the phrase is correctly interpreted as "keeping the locking member in a locked position relative to the security slot by use of a pin." In support, ACCO argues that this construction is consistent with the claim language itself, the specification of the '403 patent, the dictionary definition of "maintain," and the ruling of one other district court that has considered nearly identical language.[1] PC Guardian

---

[1]That Court was in the Northern District of California, Judge Susan Illston, who adopted ACCO's construction as the claim term's plain and ordinary meaning and found that Defendants

proposes the phrase should be construed as "preventing the locking member from returning to a position aligned relative to the security slot by use of a pin," where pin is separately construed as "a short, rod-like structure positioned near, but separate from, the locking member." In addition, PC Guardian proposes construing the phrase "wherein said pin extends into said security slot after said locking member has moved to a locked position" in such a way that "extends" is an active verb with a temporal connotation, rather than a state of being about how far the pin extends.

The primary dispute centers around the construction of the term "maintaining" as "keeping" or "preventing." A heavy presumption applies that the claim term carries its ordinary and customary meaning, as established by the dictionary definition, which is "keeping in existing state." PC Guardian's proposed construction of "preventing the locking member from returning to a [certain] position," while similar to the ordinary meaning, is by no means synonymous with it. PC Guardian's proposed construction improperly imports a limitation from the '403 specification into the claim and, in contravention of well-established claim construction methodology, excludes a preferred embodiment in the specification (depicted in Figure 26B). For these reasons, I adopt ACCO's construction that "wherein the locked configuration is maintained by use of a pin" means "keeping the locking member in a locked position relative to the security slot by use of a pin."

Next, PC Guardian argues that the phrase "wherein said pin extends into said security slot after said locking member has moved to a locked position" ought to be construed in such a

_____

could not overcome a heavy presumption in favor of defining "maintaining" as "keeping" or "keeping in existing state." *See ACCO Brands, Inc. v. PC Guardian Anti-Theft Products, Inc.*, No. 04-03526, 2007 WL 4287314, at *3-4 (N.D. Cal. Dec. 5, 2007).

way that "extends" is an active verb with a temporal connotation. Here again, however, nothing in the claim term suggests that the verb "extends" is active or contains a temporal scope. PC Guardian's reliance on Federal Circuit opinion in earlier litigation between these parties over the related '989 patent is misplaced. There, the Court construed the term "for extending" as an active verb, but that term is not the equivalent of the term "extends," which is used in the claim here. *See ACCO Brands, Inc. v. Micro Sec. Dev. d/b/a PC Guardian*, 346 F.3d 1075 (Fed Cir. 2003). Rather, "extends" is an intransitive verb that describes the state of being of the pin. Where the patent teaches an action, as it does in claim 5, the language includes the participle "inserting" to describe an action in particular sequence. PC Guardian's construction improperly limits the scope of the claim, and therefore I decline to adopt it. The ordinary meaning of the term shall govern.

Lastly, with regard to the '403 patent, Defendants propose constructions of the term "pin." PC Guardian proposes the term "pin" should be construed as "a short rod-like structure positioned near, but separate from, the locking member."[2] Noble proposes the term "a pin" means "a single pin which is moveable relative to the attachment mechanism to extend into the security slot after the locking member has moved to a locked position, in a manner which keeps

---

[2]Similarly, with respect to claim 16 which recites "a pair of pins," PC Guardian suggests that the appropriate construction is "a pair of short, rod-like structures positioned near, but separate from, the locking member."

the locking member in a locked position, as long as the pin is retained in the security slot." [3] ACCO submits that the term "pin" is unambiguous and requires no construction.

Defendants' proposals, specifically those that relate to location and function, require additional limitations to the term "pin" that are not in the claim language nor supported from the specification or prosecution history. Claim 11 does not require the pin to be in a position near, but separate from, the locking member. Claims 3, 5, and 16 describe a pin separate and apart from a locking member, but, absent clear disavowal, this limitation cannot be incorporated into other claims that do not recite such a differentiation. Such a limitation may also not be incorporated from structures depicted in certain preferred embodiments but not others. With regard to structure, PC Guardian argues that during the prosecution of the related '794 patent ACCO limited the scope of the term "pin" to a "short stiff wire, rod or something resembling a wire or rod in shape or use." Indeed, ACCO responded to the examiner that the cylindrical second element 26 of Wilson was not a pin because a pin should have its "everyday meaning" as a "short stiff wire, rod or something resembling a wire or rod in shape or use." I decline to adopt the additional limitations proposed by Defendants, but in light of the prosecution history, I will adopt ACCO's proposed ordinary meaning that a "pin" means a "short stiff wire, rod or something resembling a wire or rod in shape or use."

---

[3]In the context of claim 16, where the term "pin" appears in the phrase "a pair of pins in the attachment mechanism," Noble argues for a construction that would require "a pair of pins which emerges from the housing through an aperture in the housing." Noble's opening brief on claim construction does not address this variation in construction. Regardless, the limitation on the term is rejected for the same reasons that I decline to construe "pin" beyond its ordinary meaning.

**V. Claim Construction for U.S. Patent 7,121,125**

The additional claims in the '125 Patent which Defendants' argue require construction are stated below, with the disputed terms emphasized.

> 1. A locking system, comprising:
> . . .
> A **retractable inhibiting member** coupled to said housing, **the retractable inhibiting member inhibiting removal of the slot engagement member** from the security slot when the security device is in the locked configuration, **the retractable inhibiting member** being retractable relative to the slot engagement member, and
> . . .
> 8. A system, comprising:
> . . .
> **An inhibiting member** coupled to said slot engagement member, **the inhibiting member inhibiting the removal of the slot engagement member** from the security slot when the slot engagement member is in the second configuration.

PC Guardian and Noble contend that claims 1 and 8 require construction. PC Guardian makes three proposals with regard to construction of terms in claims 1 and 8. First, PC Guardian proposes that the "retractable inhibiting member" of claim 1 and "inhibiting member" of claim 8 must be "inserted into the slot" to perform their functions of inhibiting removal of the slot engagement member. Second, PC Guardian argues the term "retractable" in claim 1 must be interpreted in view of the specification and prosecution history, which indicate a contemplated meaning of "capable of being withdrawn linearly." Third, PC Guardian insists that the terms "retractable inhibiting member" of claim 1 and "inhibiting member" of claim 8 should be construed as means-plus-function elements under 35 U.S.C. § 112, ¶ 6 and be statutorily confined to the corresponding structures of the relevant embodiments of the '125 patent, and equivalents. Noble makes two proposals regarding construction for claims 1 and 8 of the '125 patent, both of which are similar to PC Guardian's first proposal. For claim 1, Noble suggests

"retractable inhibiting member" should be construed as "a member which is retractable, i.e., moveable, relative to the slot engagement member, in a manner such that when the slot engagement member is in the security slot, the retractable inhibiting member inhibits the slot engagement member from being moved out of the security slot." For claim 8, Noble urges that the definition of "an inhibiting member" ought to be "a member which prevents return of the 'slot engagement member' to the first configuration." In contrast, ACCO asserts that the plain meaning of all of the '125 patent claims should prevail and that no further claim construction is required.

   A. *"Retractable inhibiting member" of Claim 1 and "inhibiting member" of Claim 8*

PC Guardian argues that the terms "retractable inhibiting member" and "inhibiting member" are hardly clear on their face and only indicate the function ("inhibiting") but not the structure or method of performance of the device. PC Guardian proposes that the phrase "inserted into the slot" be added to these claims in order to clarify that the inhibiting member must be inserted into the slot to perform its function of inhibiting removal of the slot engagement member. In support, PC Guardian points to two preferred embodiments in the specification that both show the inhibiting member within the security slot (Figures 14 and 15). PC Guardian further argues that ACCO clarified during the prosecution of the '125 patent that the inhibiting member must be in the slot when functioning in order to inhibit removal of the slot engagement member.

Noble argues that the term "inhibit" as used in the phrases "retractable inhibiting member" and "inhibiting member" means a member which is retractable, i.e., moveable, relative to the slot engagement member, in a manner such that when the slot engagement member is in

the security slot, the retractable inhibiting member inhibits the slot engagement member from being moved out of the slot.

ACCO argues that there is no support in either the specification or the prosecution history of the '125 patent for such a narrowing of the ordinary meaning of the plain claim language.

First, the claim language itself imposes no requirement that the inhibiting member be inserted into the slot when "inhibiting removal of the slot engagement member from the security slot." The claim language describes the inhibiting member as "coupled to the housing" and retractable "relative to the slot engagement member." The claim language further makes clear that the inhibiting member inhibits removal of the slot engagement member from the security slot when the device is in a locked configuration. Claim 4 requires that the inhibiting member "extend through the housing," and Claim 8 describes that the inhibiting member is "coupled to the slot engagement member" and that it inhibits removal of the slot engagement member from the security slot when in the second configuration. None of these detailed descriptions requires that the inhibiting member be "inserted into the slot."

In contrast, the claim language clearly indicates that the slot engagement member is "retained within said security slot" when in certain configurations. If the claim had intended the inhibiting member to likewise be inserted into the slot, it would have included that specification in its clear language. Therefore, neither of Defendants' proposed constructions is supported by the claim language itself.

Second, although the inhibiting member is featured within the security slot in two preferred embodiments in the specification, restrictions from particular embodiments cannot be imported into the claim as a whole. *Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1376 (Fed. Cir. 2006); *Texas Instruments, Inc. v. United States Int'l Trade Comm'n*, 805 F.2d 1558, 1563

(Fed. Cir. 1986) ("This court has cautioned against limiting the claimed invention to the preferred embodiments as specific examples in the specification.").  This is especially so when "[n]othing beyond that depiction [of particular preferred embodiments] limits the claim language - the defining portion of the patent document - to some particular orientation."  *Agfa*, 451 F.3d at 1376-77.  Furthermore, the limiting constructions proposed by Defendants would actually exclude other preferred embodiments described in the specification, including Figures 19 and 21D, which do not require the inhibiting member be inserted into the slot.  Thus, such constructions cannot be sustained.  *Burke, Inc. v. Bruno Indep. Living Aids, Inc.*, 183 F.3d 1334, 1341 (Fed. Cir. 1999).

Third, the prosecution history of the '125 patent fails to support any disavowal of claim scope by ACCO.  PC Guardian's excerpted discussion between ACCO's inventors and the Examiner does not, as PC Guardian suggests, demonstrate a disavowal of any claim scope covering the inhibiting member being located outside of the slot for inhibiting removal of the slot engagement member.  The Examiner rejected an independent claim as anticipated by U.S. Patent No. 5,082,232 to Wilson under 35 U.S.C. § 102(b).  In response, ACCO inventors argued that Wilson was distinguishable because it did not teach *both* a slot engagement member *and* an inhibiting member.  ACCO did not make any arguments as to whether or not the inhibiting member was required to be inserted into the slot, but rather sought clarification from the Examiner as to which object the Examiner believed to be the inhibiting member and which object was believed to be the slot engagement member.  ACCO pointed out that in Wilson "there is only one structure that fits into the hole" in order to demonstrate that Wilson did not teach both a slot engagement member and an inhibiting member.  Neither the Examiner nor ACCO made

any mention of the location of the inhibiting member as being inside or outside the slot, and thus there is no basis for the argument that ACCO made any disavowal.

Because there is no support in the claim language, the specification, or the prosecution history, I decline to adopt either of Defendants' limiting constructions of the phrases "retractable inhibiting member" and "inhibiting member" as used in the '125 patent. Those phrases shall carry their plain and ordinary meaning as clearly described in the claim language.

B. "Retractable"

PC Guardian argues that the term "retractable" should be interpreted to mean "capable of being withdrawn linearly" because the term by itself leaves ambiguity as to how the inhibiting member moves relative to the slot engagement member, since two parts can move toward and away from each other in a myriad of ways. Again, PC Guardian points to three specific embodiments (Figures 14, 15, and 27A and B) in support of its proposed construction and argues that the remaining embodiments of the '125 patent similarly support such a construction. PC Guardian also argues that the prosecution history reveals that the Examiner understood "retractable" to mean capable of being withdrawn linearly. ACCO argues that the claim language makes clear that the retractable inhibiting member must only be retractable "relative to the slot engagement member" and imposes no further restrictions on the term.

Regarding the specification and the preferred embodiments that depict the inhibiting member retracting linearly relative to the slot engagement member, as explained above, references in such embodiments should not be used to limit the claims. *See, supra, Free Motion Fitness*, 423 F.3d at 1351. In general, courts "indulge a heavy presumption that a claim term carries its ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) (internal quotation omitted). Dictionary definitions may establish a

claim term's ordinary meaning, *see Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1344 (Fed. Cir. 2001), and "retractable" ordinarily means "to draw back," without any reference to a specific linear direction. *Webster's Second New Riverside University Dictionary* 1004 (1984). The use of the word "retractable" and the limit imposed by the claim language ("retractable relative to the slot engagement member") is not overcome or further limited by any of the drawings in the specification.

Regarding the prosecution history, that too shows no disavowal of the scope of the term "retractable" by ACCO. The particular direction of movement of the inhibiting member was not an issue before the Examiner. The issue was what the inhibiting member was retractable relative to. The Examiner's rejection of certain claims explained that those "claims do not set forth the inhibiting member as being retractable relative to anything in particular." In response, ACCO amended the claims to specify that the retractable inhibiting member is "retractable relative to the slot engagement member," and that amended language remains in the claim. The Examiner initially maintained the rejection in light of the Carl patent, which also disclosed an inhibiting member retractable relative to the slot engagement member, reasoning that ACCO's claim was not patently distinct. Subsequently, however, the Examiner accepted ACCO's further response that Carl was not prior art and therefore did not need to be distinguished in order to allow ACCO's claims. The rejection based on the Carl patent was ultimately withdrawn. Regardless, the specific direction of retraction was not addressed by either the Examiner nor ACCO during the prosecution. The issue was what the inhibiting member was retractable relative to, not in what direction the retraction was performed.

Because there is no support in the claim language, the specification, or the prosecution history, I decline to adopt PC Guardian's construction of the term "retractable" as used in the

17

'125 patent. "Retractable" shall carry its plain and ordinary meaning and only be modified by the clear claim language "relative to the slot engagement member."

### C. "Retractable inhibiting member" and "inhibiting member" as Means-Plus-Function Limitations

PC Guardian argues that the terms "retractable inhibiting member" of claim 1 and "inhibiting member" of claim 8 should be construed as means-plus-function elements under 35 U.S.C. § 112, ¶ 6 and be statutorily confined to the corresponding structures of the relevant embodiments of the '125 patent, and their equivalents. According to PC Guardian, those phrases recite the function of the members without also reciting sufficient structure for performing that function. 35 U.S.C. § 112, ¶ 6 provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

The word "means" is not the only trigger that will invoke § 112(6), but a claim limitation that actually uses the word "means" will create a rebuttable presumption that the section applies. *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 957 (Fed. Cir. 1983); *CCS Fitness*, 288 F.3d at 1369. In contrast, a claim term that does not use "means" will trigger the rebuttable presumption that § 112(6) does not apply. *CCS Fitness*, 288 F.3d at 1369.

In this case, the claims at issue do not use the catch phrase "means," thereby triggering the rebuttable presumption that § 112(6) does not apply. Still, PC Guardian can rebut this presumption if it demonstrates that the claim terms fail to "recite sufficiently definite structure" or else recite a "function without reciting sufficient structure for performing that function." *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).

To determine whether sufficient structure is in fact recited by the terms used in the claim limitations, the Federal Circuit has inquired into whether the "term, as the name for structure, has a reasonably well understood meaning in the art." *Greenberg v. Ethicon Endo-Surgery, Inc.*, 91 F.3d 1580, 1583 (Fed. Cir. 1996). The fact that a particular mechanism - in this case "inhibiting member" - is defined in functional terms is not sufficient to convert a claim element containing that term into a "means for performing a specified function" within the meaning of § 112(6). *Id.* (noting that many devices take names from the functions they perform, including "filter," "brake," "clamp," "screwdriver," and "lock.").

PC Guardian argues that these terms have no special meaning to one of ordinary skill in the art of lock design and that no dictionary definition of either phrase exists. The term "inhibiting member" appears only twice in the specification, and, according to PC Guardian, the specification therefore fails to describe the term in enough detail to avoid means-plus-function construction.

Contrary to PC Guardian's assertions, the Federal Circuit has explained "member" is ordinarily understood to connote structure. *See CCS Fitness*, 288 F.3d at 1369. Moreover, ACCO has cited and included as exhibits six other mechanical patents, including patents for locking mechanisms, that use a version of the term "inhibiting member" to connote structure. This is persuasive that the term does indeed have a reasonably well-understood meaning in the art.

More important, "member," as defined by common and technical dictionaries, refers to a "structural unit such as a ... beam or tie, or a combination of these," *see* McGraw-Hill Dictionary of Scientific and Technical Terms 1237 (5th ed.1994), or to a "distinct part of a whole," *see*

American Heritage Dictionary 849 (3d ed.1996).  These definitions indicate that the term "member" denotes a structure that is, at the very least, a single unit in a larger whole.

Further, in addition to the structure suggestion by these dictionary definitions, the claims themselves offer descriptions of the "inhibiting member."  The member can be a pin or pins, a screw, abutment plates, or a spindle arm.  The member must be coupled to the housing, inhibit removal of the slot engagement member from the security slot when in the locked configuration, and be retractable relative to the slot engagement member.  The inhibiting member must be coupled to the slot engagement member and inhibit removal of the slot engagement member when the security slot is in the second configuration.

PC Guardian has not shown that anything in the specification or prosecution history overcomes the "heavy presumption" that "member" carries its ordinary meaning.  *Johnson Worldwide*, 175 F.3d at 989.  Because the specification provides details of the structure and because the term "member" has a reasonably well-understood meaning in the art and in common and technical dictionaries to connote structure, I decline to construe these terms as mean-plus-function elements under 35 U.S.C. § 112, ¶ 6.

## VI.  The '989 and '479 Patent Claims

The disputed claims in the '989 and '479 patents have all been addressed by the foregoing claim construction of terms in the '403 and '125 patents.  To the extent that any slight variation in wording is disputed, I decline to further limit the scope of the claims here beyond their ordinary, plain meaning.

## VII. Conclusion

The majority of terms in the patents-in-suit need no construction because they have well-understood definitions, capable of application by both the jury and this court in considering the evidence submitted in support of an infringement or invalidity case. The ordinary meaning of a "pin" is a "short stiff wire, rod or something resembling a wire or rod in shape or use." For the reasons stated above, I adopt the construction that "wherein the locked configuration is maintained by use of a pin" means "keeping the locking member in a locked position relative to the security slot by use of a pin."

ENTER:

James B. Zagel
United States District Judge

DATE: June 25, 2008