IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GUAN GAO COMPANY, LTD. d/b/a POLOX COMPANY, LTD. and NOBLE SECURITY, INC., | ) ) ) ) | |
| Plaintiffs/Counterclaim Defendants, | ) ) ) | Civil Action No. 07-cv-00591 |
| v. | ) ) | Honorable James B. Zagel |
| ACCO BRANDS USA LLC, | ) ) | **JURY TRIAL DEMANDED** |
| Defendant/Counterclaim Plaintiff, | ) ) ) ) | |
| v. | ) ) ) | |
| MEIR AVGANIM, INNOVETIVE LOCKS LTD. d/b/a INNOVATIVE LOCKS LTD., PEMANDROS TRADING LTD., AND OFFICE SECURITY, INC., | ) ) ) ) ) | |
| Counterclaim Defendants. | ) ) ) | |

### FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT OF PATENT INVALIDITY AND UNENFORCEABILITY, NON-INFRINGEMENT AND SHERMAN ACT ANTITRUST VIOLATIONS

Plaintiffs, GUAN GAO COMPANY, LTD. d/b/a POLOX COMPANY, LTD.

("Polox") and NOBLE SECURITY, INC. ("Noble"), through its counsel and for the complaint

against Defendant ACCO BRANDS CORPORATION ("Acco") states as follows:

1.  This is an action for a Declaration of Patent Invalidity and Unenforceability under

the Declaratory Judgment Act of the Patent Act of the United States, and related causes.

## THE PARTIES

2.    Plaintiff Polox is a Taiwan Corporation with a principal place of business in Taiwan and is engaged in the business of marketing cylinder locks that are used in the computer security, particularly laptop computer security, marketplace.

3.    Plaintiff Noble is a company with a principal place of business at 13521 Immanuel Road, Pflughville, Texas 78660 and is similarly engaged in the business of marketing cylinder locks that are used in the computer security, particularly laptop computer security, marketplace.

4.    Upon information and belief, Defendant Acco is a corporation with a principal place of business in Lincolnshire, Illinois and is similarly engaged in the business of marketing cylinder locks that are used in the computer security, particularly laptop computer security, marketplace, including in this District.

## JURISDICTION AND VENUE

5.    This action arises under the patent laws of the United States and seeks relief, inter alia, under the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202.  This Court has jurisdiction under 28 U.S.C. § 1338(a).  Venue is proper in this judicial district under 28 U.S.C. §1391(c) and 1400(b).

## CLAIM FOR RELIEF

### Background Facts

6.    By letter dated September 26, 2006 (attached as **Exhibit A** to the original Complaint), Acco has accused Noble of infringing U.S. Patent No. 7,100,403 (the "'403 patent") (attached as **Exhibit B** to the original Complaint), and U.S. Patent No. 7,111,479 (the "'479 patent") (attached as **Exhibit C** to the original Complaint).

2

7. By similar letter addressed to Polox, Acco has charged Polox with infringement of the same '403 and '479 patents.

8. Upon information and belief, similar letters have been sent to numerous customers who purchase the Polox products involved in this litigation, including via Noble. By these letters and subsequent actions, including the filing of counterclaims in this action, Acco has further cited infringement of U.S. Patent No. 5,502,989 (the "'989 patent") (of record) and U.S. Patent No. 7,121,125 (the "'125 patent") (of record).

9. Acco has expressly threatened an action for patent infringement unless Polox and Noble cease their allegedly infringing activities.

10. Upon information and belief, since the early 1990s an industry standard and custom has been established to provide laptop computers and many desktop computers with a substantially rectangular slot in the outer body of the computers which measures about 2.5 millimeters to 3.5 millimeters in height by about 6.5 millimeters to 7.5 millimeters in width.

11. Numerous suppliers of computer locks have created various lock products that utilize a locking element that is insertable into the aforementioned slot and lockable therein, with a cable attached to the lock that can be secured to a stationary object, such as a table, a chair or the like.

12. Upon information and belief, slots in computer products have been described in the prior art many years prior to the 1990s.

13. As noted in **Exhibit A**, Kensington Computer Products Group ("Kensington") is a division of the Defendant Acco.

14. Upon information and belief, Kensington first filed a patent application on a computer security device, i.e., a lock, that fits into a slot provided on a laptop computer or a

3

similar desktop computer, on January 24, 1992. As further stated in **Exhibit A**, and upon information and belief, Kensington has since parlayed that original patent application into numerous issued patents, many of which claim priority and assert an invention date as least as early as January 24, 1992 and January 19 and April 5, 1993.

15.    The '403 patent -- which was filed on May 4, 2004 -- similarly claims priority to January 24, 1992.

16.    Similarly, the '479 patent -- which was filed on March 13, 2001 -- claims priority to January 24, 1992.

17.    In addition, the '989 patent, filed on September 16, 1994, also claims priority to January 24, 1992.

18.    Moreover, the '125 patent, filed on November 12, 1999, also claims priority to the January 24, 1992 date.

### Acco is Barred by the Patent Exhaustion Doctrine in Accordance with U.S. Supreme Court Decision in Quanta v. LG Electronics, as Computer End-Users and Equipment Suppliers have an Implied License to Use Their Purchased Computers, Including Acting to Protect from Theft of Same

19.    All claims of the '403, '479, '989 and '125 patents require the inclusion of a "portable electronic device" with a "security slot" therein. All of the claims of the '403 and '125 patents and certain patent claims of the '989 and '479 patents require a security slot of "about 3 x 7mm."

20.    Defendants Polox and Noble do not and have never made, sold or otherwise been in the business of providing portable electronic devices with a security slot therein, let alone a security slot of about 3 x 7mm.  Therefore, Polox and Noble are not and cannot be direct infringers of any of the patent claims in suit here.

4

21.    On information and belief, commencing in 1991 and since, Acco has persuaded, cajoled, enticed and otherwise caused manufacturers of electronic equipment to include a security slot of about 3 x 7mm, suitable for receiving an anti-theft lock therein.  By its own admissions, Acco persuaded the industry to underline standardize the security slot size.  Acco's actions negate its claim that its patents confer on it the exclusive rights to utilize the standardized security slot.

22.    On information and belief, Acco never demanded or imposed any restriction on the sale of the computers to end-users to require or limit the use of the security slot in the computer to only those security locks made by Acco and/or its licensees.  To the contrary, through its actions since 1991, Acco has effectively legally acquiesced in the absolute right of equipment manufacturers to sell their wares with security slots of about 3 x 7mm therein, without any limitations being imposed on either the equipment manufacturers and sellers, or on their end-users to utilize the about 3 x 7mm slot in any manner desired.  Legally, these electronic equipment sellers and their end-users are impliedly licensed and immunized against any suit by Acco.

23.    Pursuant to the June 9, 2008 United States Supreme Court decision in *Quanta v. LG Electronics*, the Patent Exhaustion Doctrine exhausts a patent owner's right upon the first sale of any product, the sale of which has been sanctioned or authorized by the patent owner.  Thus, any rights that Acco might have in potentially infringing "portable electronic devices" with a security slot under the '403, '479, '989, or '125 patents are exhausted upon first sale of such portable electronic devices to bona fide purchasers, whether an end-user business or individual consumer.  Thereafter, purchasers and subsequent users of the product -- and by extension,

5

suppliers to these users – possess an implied license to make full use of the purchased portable electronic device.

24. Since neither of the Defendants Polox and Noble directly infringes any of the '403, '479, '989 or '125 patent claims, their sales of security locks devices cannot induce infringement through end-users' utilization of the computer and its security slot, which they have an implied license to use.

**Acco Misrepresented and Deceived the Patent**
**Examiner About Criticality and Novelty of 3mm × 7mm Slot**

25. The '403 patent-in-suit here includes at least one claim, namely independent claim 1, which includes the recitation of a method for locking a portable electronic device that incorporates the step of inserting a locking member that is part of an attachment mechanism into a generally rectangular security slot, having dimensions of about 3 millimeters × 7 millimeters, defined in a wall of the portable electronic device.

26. Upon information and belief, during the prosecution of the application that resulted in the '403 patent, the Defendant Acco, which is the assignee on this patent, has asserted to the Patent Office that the security slot was a unique and an inventive slot, the dimensions of which effectively produced inventive and unexpected, and therefore novel, results owing to the particular dimensions of the security slot.

27. Upon information and belief, Acco has knowingly misled and deceived the Patent Office Examiner into believing that the particular dimensions of 3 millimeters × 7 millimeters for a security slot produced unique results that entitled Acco to receive the '403 patent, and further deceived the Examiner to believe that commercial success associated with locks that are utilized to lock portable electronic devices have some nexus or connection to the 3MM × 7MM size of the slot.

6

28. Upon information and belief, Acco's assertions to the Patent Office, as noted above, were brazenly false, as there is nothing unique or inventive about the particular slot measurements, and other slots measuring, for example, 4 millimeters × 8 millimeters would similarly have been just as effective, if not better, for securing portable devices. In fact, the commercial success of the product had nothing to do with the size of the slot and Acco so knew.

29. Upon information and belief, the standard slot that various computer manufacturers provide in their laptops, and which measure anywhere from 2.5 millimeters to 3.5 millimeters in height and from 6.5 millimeters to 7.5 millimeters in width, have nothing to do with the commercial success of locking these computers and were simply adopted by the industry as a standard slot size, to enable lock manufacturers and computer users to buy locks from any manufacturer, all of which would fit any manufacturer's portable electronic device. Acco has failed to apprise and inform the Examiner of this fact, and instead, deceived and misled and misrepresented to the Examiner that there is something unique in terms of functionality attributable to a lock that is made to fit a slot size of 3 millimeters × 7 millimeters.

30. Respecting the '479, '989 and '125 patents, each of these patents also include at least one claim whose patentability, upon information and belief, is also predicated on providing a security slot of "about 7 millimeters."

31. Therefore, the foregoing contentions mentioned with respect to the '403 patent are equally applicable to the '989, '479 and '125 patents.

32. Upon information and belief, the Defendant Acco has been aggressively enforcing various patents against numerous companies that have sought to sell and market computer security devices for laptop and desktop computers which connect to the standard security slot that measures about 3 millimeters × 7 millimeters.

7

**Acco Violated Duty of Candor by Failing to**
**Disclose Related Litigation and Material Information**

33.    A PACER computer search (attached as **Exhibit D** to the Original Complaint)
shows at least 72 actions in the Federal Courts which matched the selection for Acco Brands
Corporation, the instant Defendant, illustrating a very aggressive program of filing various
infringement lawsuits against various parties engaged in providing computer security locks.

34.    Upon information and belief, in at least some of these actions, Acco has lost
outright and it has been determined that the invention described in certain of its claims are
limited to particular configurations.

35.    Upon information and belief, in at least some of these actions, for example, in
*Acco Brands, Inc. v. ABA Locks Mfg. Co., et al.* (2:2002CV00112), at least one patent in the
chain of Acco's patents has been declared invalid over prior art and various prior art was
identified.  In that same action, allegations of inequitable conduct have been raised against Acco
in connection with its prosecution before the Patent Office of at least some applications which
are in the chain of applications involved in the patents in this lawsuit.

36.    Furthermore, upon information and belief, testimony by the (alleged) inventor,
William Murray, in the 2004 trial of *Acco Brands, Inc. v. ABA Locks Mfg. Co., et al.,* conceded
that the development of slot dimensions of 3mm x 7 mm was influenced by the computer vendor
Apple Computers which contributed to the conception of the 3mm x 7mm slot dimensions
limitation found in claims of each of the '403, '479, '989 and '125 patents, and therefore should
have been deemed at least co-inventors on the Patents-in-Suit.  Questions as to the inventorship
of patent claims are material to the patentability of the respective patents, and thus this 2004
testimony was clearly material to the then-active and subsequent prosecution of the '403, '479
and '125 patents and to at least one of the two re-examinations of the '989 patent.

8

37.    Upon information and belief, Acco had an absolute and immutable obligation to disclose to the Patent Examiners in the prosecutions of the '403, '479, '989 and '125 patents, the existence of these litigations and specifically, for example, to identify the relevant trial testimony in the 2004 trial, and likewise identify all affidavits, depositions, and other information relating to allegations of various prior art and allegations of inequitable conduct or prior art.

38.    Upon information and belief, under the law, it was insufficient to merely identify prior art from other litigations, and the existence of the various litigations had to be disclosed by identifying those litigations under MPEP §2001.06(c).

39.    Upon information and belief, Acco has brazenly, and in total disregard of its obligations of candor and good faith under 37 C.F.R. §1.56 in dealing with the Patent Office, failed to inform and properly apprise the various Patent Examiners of the proceedings in the various litigations, including the 2004 trial testimony of Plaintiff's expert Dornfeld and inventor Murray.

40.    Further, upon information and belief, there was pending litigation, on appeal to the Court of Appeals to the Federal Circuit, involving allegations of inequitable conduct against Acco.

41.    Upon information and belief, Acco has not brought those litigations to the attention of the Examiners during the prosecutions of the applications in the '403, '479, '125 patents and during at least one of the re-examinations of the '989 patent here.

9

## Acco Further Violated Duty of Candor by Failing to
## Disclose Other Information Material to Patentability

42.    Upon information and belief, Acco also failed to bring additional items material to patentability to the attention of the Examiners during the course of prosecution of the '403, '479, '125 patents and during at least one active re-examination of the '989 patent, these items including:  (1) a letter dated July 5, 2001 from counsel for Byte Brothers to Acco's counsel in a separate litigation matter relating to invention dates pertaining to the present subject matter; (2) the August 5, 1993 publication of WO93/15295 ("'295 PCT Publication"), corresponding to Acco's family of patent applications; and (3) the sale of Acco's own MicroSaver lock commencing April 1992, all of which are material prior art relative to the October 15, 1993 filing date of a CIP parent application of the Patents-in-Suit, constituting potential invalidating prior art.

43.    Upon information and belief, Acco clearly possessed knowledge of these items, each being material to patentability to at least one claim of each of the '403, '479, '989 and '125 patents, and thus Acco was subject to a duty of candor and good faith and had an absolute and immutable obligation to disclose these prior art items to the Patent Office during any active prosecution for each of the '403, '479, '989 and '125 patents.  Failure to disclose any of these items is *prima facie* evidence of intent to defraud the Patent Office and constitutes inequitable conduct.

## Acco Delayed Presenting Broad Claims for About a Decade
## and its Patents are Unenforceable for "Prosecution History Laches"

44.    Upon information and belief, a patent applicant has an obligation and responsibility to present to the Patent Office, patent claims of a breadth and scope to which they know they are entitled, as promptly as possible, without unduly delaying the prosecution of

10

patent claims in the Patent Office, through filing successive continuation patent applications, as the marketplace is entitled to rely on issued patents and the belief that the issued patents represent the full scope of patent protection a party has obtained.

45.    Upon information and belief, under well established patent principles, the doctrine of "prosecution history laches" bars a patentee from asserting patent claims that could have been asserted years earlier, but have not.

46.    Upon information and belief, in the cases of each of the '403, '479 and '125 patents, patent claims having the breadth and extent to cover the instant Plaintiffs' products and, moreover, those claims which grant Acco a monopoly on what Acco characterizes and describes as its own proprietary "Kensington Security Slot," could have been presented shortly after the first application was filed in January of 1992. Instead, Acco has delayed and has sought to manipulate the Patent Office patent procurement process by filing the applications on the '403 patent in 2004, the application for the '479 patent in 2001, and the application for the '125 patent in 1999, each of these being many years after the original patent filing, causing each of these three patents to issue in 2006, or approximately 14 years after the original filing. The undue delay in presenting claims of the breadth and scope as presented in these claims makes these patent claims subject to the prosecution history laches doctrine and renders them unenforceable against the instant Plaintiffs.

### Acco Engaged in Unfair Competition by Knowingly Using Confidential and Stolen Information Which it Improperly Received From Individuals Associated with Companies Who Are Involved in Business Relationships with Polox and Noble

47.    In an illegal campaign to eliminate and destroy Polox and Noble as legitimate suppliers of computer security locks, Acco has engaged in a letter campaign by which has

11

written to virtually all customers of Polox/Noble, threatening them with litigation based on the instant patents.

48.    The scope of the letters and Acco's ability to identify and contact Polox/Noble's customers would not have been possible, but for Acco's collaboration with former employees of companies associated with Noble, from whom Acco illegally obtained confidential and secret business information which it otherwise would not have been able to independently obtain through reasonable means.

49.    By a letter written in approximately the middle of 2006, Acco was warned not to contact Jane Ratto and other individuals who have stolen information from the aforementioned associated companies.

50.    Upon information and belief, Acco allegedly received and used confidential and secret information from Jane Ratto and is presently using that information against Polox and Noble to destroy their business.

51.    Acco's contacting and threatening of Noble's customers has created immediate, and possibly irreparable, harm and damage to Polox and Noble and will continue to cause such harm, if not outrightly destroy these companies, unless immediately restrained and enjoined.

## COUNT I

### Patent Invalidity

52.    This is action for declaratory judgment that the Defendant's '403, '479, '989 and '125 patents claims, to the extent applicable to any activity or conduct taken by either one of the Plaintiffs, are invalid under one or more of the provisions of 35 U.S.C. §102, §103 and §112.

53.    The allegations in paragraphs 1 through 51 are realleged and reincorporated by reference as if fully set for herein.

12

54.     Upon information and belief, each of the claims of the '403, '479, '989 and '125 patents, to the extent applicable to the activities of the Plaintiffs, have set forth a combination of elements, none of which combination meets the criteria for patentability or the definitional requirements of 35 U.S.C. §102, §103 and §112.

## COUNT II

### Unfair Competition

55.     This is a Lanham Act claim for false advertising.

56.     The allegations in paragraphs 1 through 54 are realleged and reincorporated by reference as if fully set for herein.

57.     The Defendant's actions as described herein and its advertising to the trade that it is the exclusive owner of a technology, that it owns the Kensington Security Slot, and that any lock that is provided by anyone that is connectable to that "Kensington Security Slot" is an infringer, constitute false advertising and misuse of information and is actionable under the Lanham Act.

58.     The Defendant's actions as described herein and its advertising to the trade its patents that it procured by inequitable conduct and by making deceitful and false statements to the Examiner, with the further recognition by Defendant that Plaintiffs' actions were protected by implied license, constitutes false advertising and unfair competition and is actionable under the Lanham Act.

59.     In making these false statements to the industry, Acco intended to harm, and has, in fact, irreparably harmed the Plaintiffs' business reputation and caused Plaintiffs to lose good will.

13

60.   Acco's conduct has impaired and continues to impair the Plaintiffs' relationship with existing suppliers and customers and has damaged Plaintiffs' ability to do business.  The Plaintiffs have lost valuable business opportunities as a direct and proximate result of Acco's acts.

61.   By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer, severe irreparable harm from which there is no adequate remedy at law.

62.   Plaintiffs are entitled to the imposition of a preliminary and permanent injunction against Acco to restrain and enjoin Acco and its agents and those acting in concert and participation with them from further tortiously interfering with the Plaintiffs' business relationships.

63.   By reason of the foregoing, Plaintiffs are entitled to an award of damages from Acco in an amount to be determined at trial, but in no event less than $10,000,000.00.

64.   Acco's aforesaid acts are of such wanton, willful and malicious nature, that Plaintiffs are entitled to an award of punitive damages in an amount of not less than $10,000,000.00, in order to punish Acco and deter others similarly situated from committing such acts in the future.

## COUNT III

### Tortious Interference With Existing and Potential Business Relationships

65.   This is a claim for tortious interference of existing and potential business relationships.

66.   The allegations in paragraphs 1 through 64 are realleged and reincorporated by reference as if fully set for herein.

14

67.    The Defendant's actions, as described herein, including its advertising to the trade of its right vis-à-vis patents that it obtained with inequitable conduct and with misrepresentation to the Patent Office, with the further knowledge by Defendant that Plaintiffs' actions were protected by implied license, has resulted in the Plaintiffs having to deal with questions from customers, loss of business, and potential loss of entire relationships.

68.    In making these false statements to the industry, Acco intended to harm, and has, in fact, irreparably harmed the Plaintiffs' business reputation and caused Plaintiffs to lose good will.

69.    Acco's conduct has impaired and continues to impair the Plaintiffs' relationships with existing suppliers and customers and has damaged Plaintiffs' ability to do business. The Plaintiffs have lost valuable business opportunities as a direct and proximate result of Acco's acts.

70.    By reason of the foregoing, Plaintiffs have suffered, and will continue to suffer, severe irreparable harm from which there is no adequate remedy at law.

71.    Plaintiffs are entitled to the imposition of a preliminary and permanent injunction against Acco to restrain and enjoin Acco and its agents and those acting in concert and participation with them from further tortiously interfering with the Plaintiffs' business relationships.

72.    By reason of the foregoing, Plaintiffs are entitled to an award of damages from Acco in an amount to be determined at trial, but in no event less than $10,000,000.00.

73.    Acco's aforesaid acts are of such wanton, willful and malicious nature, that Plaintiffs are entitled to an award of punitive damages in an amount of not less than

$10,000,000.00, in order to punish Acco and deter others similarly situated from committing such acts in the future.

## COUNT IV

### Prosecution History Laches

74.   This count is for prosecution history laches.

75.   The allegations in paragraphs 1 through 73 are realleged and reincorporated by reference as if fully set for herein.

76.   Acco's delay of over a decade in presenting patent claims directed essentially to a "security slot" provided in a laptop computer and/or a laptop computer that is secured via a security slot to an object such as a chair and the like by a cable, amounts to prosecution history laches, which renders each of the '403, '479 and '125 patents unenforceable.

## COUNT V

### Violation of the Sherman Act 15 U.S.C. § 2

77.   This count is for violation of the Sherman Act 15 U.S.C. § 2.

78.   The allegations in paragraphs 1 through 76 are realleged and reincorporated by reference as if fully set for herein.

79.   This is a claim for willful, intentional and improper maintenance of a monopoly in relevant markets in violation of Section 2 of the Sherman Act, 15 U.S.C. §2.

80.   The relevant market for Plaintiffs' antitrust claim is the portable computer lock market in the United States (the "relevant market").

81.   The geographic market for is the United States because, inter alia, such products made by Plaintiffs and Defendant are used or sold throughout the United Sates.

16

82.   Through the willful and intentional maintenance of this sham assertion of the '403, '479, '989 and '125 patents and overreaching damages, Acco has intentionally, improperly and illegally sought to achieve a monopoly by barring entry of competitors to the relevant market and/or drive its competitors from the relevant market, a natural consequence of its actions.

83.   Acco's procurement and aggressive enforcement of its '403, '479, '989 and '125 patents are a sham, because Acco knows that it procured the '403, '479, '989 and '125 patents by making false, deceiving and outrightly incorrect representations to the Patent Office that a security slot of 3MM × 7MM has any connection to the commercial success of its products.

84.   Acco's procurement of the '403, '479, '989 and '125 patents is a further sham and an illegal attempt to monopolize the marketplace, because Acco knows that it knowingly violated the requirements of candor and good faith with the Patent Office by failing to bring to the attention of the Patent Office the existence and various aspects and allegations that have arisen in connection with various litigations affecting patents which are in the chain of the patents leading to the '403, '479, '989 and '125 patents.

85.   Acco's sham assertions to the industry about its broad patents and right to bar anyone from connecting to what it terms its proprietary Kensington security slot constitute a knowing and willful and wanton interference with direct and potential business relationships of its competitors, through the use of the governmental process of obtaining patents as an anti-competitive weapon.

86.   These sham assertions to the Patent Office and to the industry constitute intentional, willful and improper efforts by Acco to achieve or maintain its monopoly power in the relevant markets and not as a consequence of a superior product, or rightful ownership of patentable concepts and ideas.

{00956957.1}

87. Acco's sham assertion to the industry concerning its patents that it obtained by fraud on the Patent Office and inequitable conduct has a chilling effect on competitors and new entrants to the relevant markets.

88. The instant Plaintiffs have been proximately harmed by Acco's sham assertions to the marketplace and by incurring the costs of defending against Acco's sham infringement claims.

89. Plaintiffs and other competitors in the relevant market have been and will continue to be harmed in the future by the chilling effect of Acco's sham assertions of patent infringement.

## COUNT VI

### Patent Exhaustion Doctrine

90. This count is for patent exhaustion doctrine.

91. The allegations in paragraphs 1 through 89 are realleged and reincorporated by reference as if fully set for herein.

92. As each of the claims '403, '479, '989 and '125 patents contains a limitation requiring the presence of a "portable electronic device," and Acco merely standardized the slot size, its patent rights are exhausted upon the first sale of any device sought to be encompassed by those patent rights, Plaintiffs may avail themselves of an implied license granted to the purchasers of the portable electronic devices, and thus are not subject to viable claims of patent infringement, either under allegations of direct, induced or contributory infringement.

WHEREFORE, Plaintiffs Polox and Noble pray that judgment be entered declaring:

A.     The '403, '479, '989 and '125 patent claims, insofar as they relate to any products of the Plaintiffs, are invalid over the prior art.

B.     That the patent claims of the '403, '479, '989 and '125 patents are unenforceable for inequitable conduct in procurement of those patents.

C.     That the patent claims of the '403, '479 and '125 patents are unenforceable against the instant Plaintiffs under the doctrine of prosecution history laches.

D.     That the Court render judgment in favor of Plaintiffs on its claim of unfair competition and interference with existing and potential business relationships and award just damages and injunctive relief on said unfair competition.

E.     That the Court find that Acco's actions in procuring the patents-in-suit and in proceeding to enforce them against the industry constitute a violation of the Sherman Act and that Plaintiffs be granted full damages, trebled, including attorneys' fees, as appropriate.

F.     That the Court find that Plaintiffs conduct herein is immune to suit owing to an implied license to practice the claims of the '403, '479, '989 and '125 patents under the patent exhaustion doctrine and that Plaintiffs be deemed not to infringe any claims of each of the '403, '479, '989 and '125 patents.

G.     That Plaintiffs Polox and Noble be granted such other and further relief as the Court may deem just and proper.

19

{00956957.1}

Dated: August 13, 2008      Respectfully submitted,


*/s/ Max Moskowitz*       .
Max Moskowitz  (Admitted *Pro Hac Vice*)
Cameron S. Reuber
Ostrolenk, Faber, Gerb & Soffen, LLP
1180 Avenue of the Americas
New York, NY  10036
Phone: 212-382-0700

and

Paul G. Juettner, Esq. (#6180920)
GREER, BURNS & CRAIN, LTD.
300 S. Wacker Dr., Suite 2500
Chicago, IL 60606-6501
(312) 360-0080

**Attorneys for Noble Security Inc.
and Guan Gao Co. d/b/a Polox**

20

**Certificate of Service**

I hereby certify that on August 13, 2008, I caused a true and correct copy of the foregoing

**First Amended Complaint** to be served on the following counsel via electronic (ECF) filing:

Deanna L Keysor
Howrey LLP
321 North Clark Street
Suite 3400
Chicago, IL 60610
keysord@howrey.com

Daniel J. Vaccaro
Michael Best & Friedrich LLP
180 North Stetson Avenue
Suite 2000
Chicago, IL 60601
djvaccaro@michaelbest.com

**Attorneys for ACCO Brands USA, LLC**

Thomas D. Rosenwein
Gordon, Glickman, Flesch & Rosenwein
140 South Dearborn Street
Suite 404
Chicago, Illinois 60603
trosenwein@lawggf.com

Bradley P. Heisler
Heisler & Associates
3017 Douglas Boulevard
Suite 300
Roseville, California 95661
forinfo@heislerlaw.com

**Attorneys for Defendant Cyberguys, Inc.**

Thomas J. Donovan
James E. Michel
Barnes & Thornburg
One North Wacker Drive
Suite 4400
Chicago, Illinois 60606
tdonovan@btlaw.com
jmichel@btlaw.com

John M. McCormack
Kolisch Hartwell, PC
260 Sheridan Avenue, Suite 200
Palo Alto, California 94306-2009
john@khpatent.com

Owen W. Dukelow
Michael R. Langer
Elizabeth Tedesco
T.J. Romano
Kolisch Hartwell, PC
200 Pacific Building
520 S.W. Yamhill Street
Portland, Oregon 97204
dukelow@khpatent.com
langer@khpatent.com
tedesco@khpatent.com
tromano@khpatent.com

**Attorneys for Defendant PC Guardian
Anti-Theft Products, Inc.**


/s/ Max Moskowitz
Max Moskowitz
**Attorney for Noble Security Inc.
and Guan Gao Co. d/b/a Polox**

21